Jack F. PICKREL, Trustee, 2700 Kettering Tower, Dayton, Ohio 45423, Plaintiff,

v.

PROFESSIONAL HOUSEWARES DISTRIBUTORS, 29309 Clayton Avenue, Wickliffe, Ohio 44092, Defendant.

In the Matter of DIXIE ENTERPRISES, INC., Debtor.

Bankruptcy No. 3–81–02812.
Adv. No. 3–83–0018.

United States Bankruptcy Court,
S.D. Ohio, W.D.

July 15, 1983.

---

Jack F. Pickrel, Dayton, Ohio, for plaintiff-trustee.

Charles M. Cobbe, Columbus, Ohio, for defendant.

Ira Rubin, Dayton, Ohio, for debtors.

CHARLES A. ANDERSON, Bankruptcy Judge.

## PRELIMINARY PROCEDURE

This matter is before the Court upon Complaint filed on 12 January 1983 by Jack W. Pickrel, Chapter 7 Trustee. The Court heard the Complaint on 7 February 1983, at which time the parties agreed to submit the matter for decision based upon the record, inclusive of stipulated facts and legal briefs which were subsequently filed. The following decision is, therefore, based upon the instant record, inclusive of the parties' briefs and stipulations of fact, and also the record in Debtor's estate file, numbered 3–81–02812, which is judicially noticed herein.

## FINDINGS OF FACT

Debtor, a retailer of consumer goods, filed a Petition under 11 U.S.C. Chapter 11 on 6 October 1981. Subsequent to Debtor's Petition filing, Defendant "consigned" merchandise worth $120,000.00 to Debtor in Possession based upon Orders by this Court dated 19 October 1981 and 3 December 1981 authorizing Debtor in Possession to enter into consignment arrangements with Defendant for up to $500,000.00 worth of merchandise. The Orders specifically further ordered that Defendant's extension of credit by consignment would be "adequately protected" by a first lien in all the consigned merchandise, as permitted in 11 U.S.C. § 364(d), and also by a grant of priority over all administrative expenses, as permitted by 11 U.S.C. § 364(c). Pursuant to the order, Defendant delivered merchandise to Debtor in the total amount of $121,-470.31.

Debtor sold part of the consigned merchandise by continued sales in the ordinary course of business. The balance of the consigned merchandise was then sold in a bulk sale of all of Debtor's remaining inventory upon order dated 18 March 1982 to a separate affiliated Debtor in a "companion" case also before this Court. The Order directed that the proceeds from sale of said merchandise be paid to priority creditors, including Defendant. Debtor was not, however, fully paid for its inventory in the bulk sale. *See* discussion in this Court's opinion in *Matter of R & R Distributing, Inc.,* 3–81–02813 (unreported, 6 October 1982). In consequence, Debtor was unable to reimburse Defendant fully from the sale of the consigned merchandise. The present outstanding balance owing Defendant based upon the consignment arrangement is approximately $51,000.00.

On 2 August 1982, Debtor converted to a request for relief under 11 U.S.C. Chapter 7. Plaintiff-Trustee was then appointed by Order dated 8 September 1982.

On 20 September 1982 and 1 October 1982, two checks, written by Debtor's controller on the Debtor in Possession's checking account for $3,000.00 and $2,000.00, respectively, were sent to Defendant as payment on the consigned goods. The Trustee had no knowledge of the checks, and their issuance was directly contrary to his instructions to Debtor's management in regard to the issuance of checks.

The Trustee then demanded return of the $5,000.00, but Defendant refused. The instant Complaint requests that this Court order that the $5,000.00 be returned to the Trustee.

The Trustee essentially argues that the transfer of the $5,000.00 was *ultra vires* because it was accomplished without either the Trustee's or the Court's approval. The Trustee further emphasizes that the moneys were paid from a general account, and it appears undisputed that Defendant's lien is not directly traceable to either the fund from which the moneys were paid or any existing funds.

Defendant's responses are threefold. First, Defendant argues that, since it is entitled to super priority over even administrative claims, any payment made, even if *arguendo* erroneous, does not deplete the estate or prejudice creditors. Second, Defendant argues that Debtor's failure to pay Defendant for the consigned goods constitutes misconduct, justifying the creation of a trust by operation of law. Defendant contends that the questioned payment is, therefore, in essence, simply payment by Debtor upon a trust obligation which the Trustee would himself have had to perform on behalf of Debtor, derivatively. Third, Defendant argues that the Trustee's "claim" against Defendant is postpetition and, therefore, may be setoff against Defendant's mutual postpetition claim based upon the subject consignment.

## DECISION AND ORDER

### I.

■ Although the circumstances *instanter* may warrant "creation" of a constructive trust (specifically a trust *ex maleficio*),

the record is incomplete regarding the alleged misconduct, i.e. the alleged "wrongful" disposition of Defendant's merchandise and the proceeds from sale thereof. If Debtor failed to reimburse Defendant from the proceeds from sale of the subject consigned goods "merely" because a third party buyer of the consigned goods failed to pay for the goods after receipt from Debtor, then Debtor's conduct would not appear to warrant a determination of misconduct. On the other hand, if knowledge that the third party buyer was unable to pay was recklessly disregarded or could have easily been obtained or could be imputed to Debtor because of the parties' close financial relationship, or if Debtor acted irresponsibly with those proceeds actually received, then Debtor's conduct could arguably justify creation of a constructive trust. *See generally,* 76 Am.Jur.2d Trusts §§ 221, *et seq.;* and 4 Collier on Bankruptcy (15th Ed.) ¶ 541.13. The Court, however, is unable to make any final determination in this regard based upon the instant record. Furthermore, even if the Court were to determine that the circumstances warrant imposition of a fiduciary trust over the subject proceeds, no evidence of record traces the subject proceeds to any account or specific property. Furthermore, there is no evidence of record tracing any proceeds to the general account from which the subject moneys were paid. In addition, even if the subject proceeds were traceable to the subject checking account, there is no evidence of record for the Court to determine the "lowest intermediate balance" of the subject account. *See generally,* 4 Collier on Bankruptcy (15th Ed.) ¶ 541.13.

### II.

■ By virtue of this Court's orders of 19 October 1981 and 3 December 1981, Defendant's claim has priority ahead of all administrative claims. 11 U.S.C. §§ 364(c) and 507. It would appear from the instant record that liquidation of Debtor's estate will result in payment to Defendant of more than the amount in question, and that such payment should not be reversed merely to be administratively repaid. The instant record, however, does not indicate the

aggregate amount of moneys available for distribution, nor the aggregate amount of other claims granted priority ahead of administrative claims and thus entitled to distribution *pro rata* with Defendant. The Court is therefore unable to determine as a matter of fact that Defendant has not "merely" received an inadvertant advance payment on its claim.

### III.

■ Regardless of the ultimate conclusions as to distribution, it appears to the Court that the Trustee's interest, as representative of Debtor's estate, is, at this point, nominal only. Any return of moneys by Defendant would inure no benefit to Debtor's estate, but instead would merely be an act of accounting. The real parties in interest in any cause of action for direct return of the moneys would appear to be either the other secured creditors or other super-priority creditors. In this case, the Trustee has not alleged any benefit to the estate justifying a return of the subject moneys.

Furthermore, 11 U.S.C. §§ 362(a)(7) and 553 are inapplicable to *post*-petition transactions, and Debtor's common law rights of setoff and recoupment are thus assertable in this situation. *See* generally, 20 Am. Jur.2d *Counterclaim, Recoupment and Setoff* §§ 11 and 12. Therefore, any interest the estate may have in seeking return of the funds improperly administratively paid should be asserted against Debtor's employees or officers alleged to have improperly disbursed the subject funds, particularly in light of likely detrimental reliance by Defendant subsequent to receipt of moneys unknowingly wrongfully paid and now rightfully setoff.

If the Court were to order return of the subject funds in this setting, such return of the funds to an essentially disinterested party would further encourage a multiplicity of suits with the Trustee acting as an unnecessary intermediary between the real parties in interest. The law does not require the doing of such a needless act.

To order the payments delivered to the Trustee would constitute more than a vain administrative complexity. There is an overriding concern implicit; namely, the integrity of the judicial process in the operation of a business under court auspices. The consignment sale was made only upon assurance that proper protection was afforded by previous court authorization. The very nature of the operation of a business undergoing reorganization by the Chapter 11 process mandates that credit extensions bearing court *imprimatur* not be jeopardized by a change in circumstances for which a consignor is not responsible and contradictory to prior court protective orders. Under the facts and issues *sub judice,* the effect of the court protective orders must be maintained as to the consignor and the Trustee must look to the liability of any third parties or corporate officers responsible for misapplication of funds to the extent of damage or to the bankruptcy estate from any defalcations.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Trustee's Complaint is DENIED.